MARY R. ROBBERSON, ESQ. (Bar No. 190641)
mary@theRSfirm.com
MAGGIE E. SCHROEDTER, ESQ. (Bar No. 270377)
maggie@theRSfirm.com
LANE C. HILTON, ESQ. (Bar No. 314892)
lane@theRSfirm.com
ROBBERSON SCHROEDTER LLP
501 West Broadway, Suite 1260
San Diego, CA 92101
(619) 353-5691

Attorneys for Creditor,
STEVEN ALPER

**UNITED STATES BANKRUPTCY COURT CALIFORNIA**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Pacifica Senior Living LLC dba Pacifica Senior Living Management LLC<br>Debtor. | CASE NO. 25-01107-CL7<br>Chapter 7<br>**MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM STAY TO LITIGATE AN ACTION IN NON-BANKRUPTCY FORUM**<br>RS No. : LCH-1<br>Judge: Hon. Christopher B. Latham<br>Dept: 1 – Room 218 |

///

///

///

///

///

///

Movant and Creditor Steven Alper ("Movant") hereby submits this Memorandum in Support of his Motion for Relief From Stay to Litigate an Action in a Non-bankruptcy Forum Under 11 U.S.C. § 362(d)(1) ("Motion").

## I. INTRODUCTION

Movant, a man in his 70s diagnosed with early-onset Alzheimer's disease, was left trapped on the floor of his room in a Senior Living Facility for two days, despite his repeated pleas for help. Once Movant was discovered, he was rushed to the hospital in acute medical distress and received several serious diagnoses. As a result, Movant is no longer able to live independently and is required to live in a skilled nursing facility.

Movant respectfully requests that this Bankruptcy Court grant relief from the automatic stay to permit his state court litigation against Debtor and a third-party non-debtor entity to proceed to mediation and, if necessary, to final judgment. This nonbankruptcy action, which has been pending for nearly one year, involves multiple parties, including a non-debtor, and is based on California state law. Liability remains undetermined, but the case has made substantial progress, including the completion of written discovery, ongoing settlement discussions, and a scheduled mediation for May 29, 2025.

Granting relief from stay is warranted under the *Curtis* factors, which determine that "cause" exists to allow the nonbankruptcy action to proceed. Specifically, the state court litigation is ripe for settlement and has advanced to a point where litigation can be efficiently concluded. Furthermore, litigating in bankruptcy court would result in inefficiencies and unnecessary duplication of efforts, particularly given the involvement of the non-debtor entity that is not under the jurisdiction of the bankruptcy court. Allowing the action to proceed in the state court will conserve judicial resources, facilitate the expeditious resolution of the claim, and provide clarity on issues essential to the bankruptcy proceedings, such as the existence and value of Movant's claim.

As such, Movant requests relief from the automatic stay in order to proceed with the upcoming mediation and to final judgment, if the case does not resolve, in order to liquidate his claim against Debtor.

## II. STATEMENT OF FACTS

### A. The Incident and the Nonbankruptcy Action

Movant is a 71-year-old retired psychotherapist who was diagnosed with early-onset Alzheimer's disease in 2021. In the spring of 2021, Movant moved into an Independent Living unit at Pacifica SL Encinitas LP ("Pacifica Encinitas"), where he remained until May 2022. [Declaration of Brett Norris ("Norris Decl.,"), ¶ 5, Ex. B.]

On May 16, 2022, Movant began to feel light-headed and slowly lowered himself to the floor; however, as he lowered himself to the floor his arm became stuck in the metal railing of his bed. Movant was unable to free himself or get up from the floor. Movant could not reach the emergency call button, so he began yelling for help. No one responded. [*Id.*]

It wasn't until approximately two days later that a staff member from Pacifica Encinitas finally checked on Movant, where he was found lying on the floor with his arm still trapped in the metal bed railing. Movant was rushed to the hospital in acute medical distress and was diagnosed with, among other things, "failure to thrive," fractured nasal bone, sprained cervical ligament, vertebral compression fracture, and pressure sores throughout his body. As a result of the incident, Movant is no longer able to live independently and is required to live in a skilled nursing facility. [Norris Decl., *Id.*]

Movant initiated a lawsuit against Pacifica Companies, LLC, Pacifica Senior Living, LLC, and Pacifica Senior Living Management, LLC, on May 6, 2024 in the San Diego Superior Court, case no. 37-2024-00020969-CU-PO-CTL (the "Nonbankruptcy Action"). [Norris Decl., ¶ 4, Ex. A.] Movant filed a First Amended Complaint against Pacifica Encinitas and Debtor on July 25, 2024. [*Id.* at ¶ 5, Ex. B.] The First Amended Complaint asserts claims against Debtor and Pacifica Encinitas

for Negligence and Elder Abuse—Violation of the Elder Abuse and Dependent Adult Civil Protection Act. [*Id.*]

Over the past year, written discovery has been completed. [Norris Decl., ¶ 6.] Based on the discovery conducted, and to minimize fees and costs, Movant, Pacifica Encinitas, and Debtor (collectively, the "Parties"), began informal settlement negotiations. [*Id.* at ¶ 7.] In February/early March 2025, the Parties agreed to participate in formal mediation. [*Id.*at ¶ 8.] Mediation is scheduled for May 29, 2025. [*Id.*] A mediator has been selected (Hon. Joan M. Lewis, Ret.), Movant has paid the mediation fees, and the Parties have begun preparing. [*Id.*] Additionally, Debtor maintains a general liability insurance policy that may provide coverage to support mediation or a potential settlement. [*Id.* at ¶ 9.]

**B. Debtor's Bankruptcy**

On March 24, 2025, Debtor filed a voluntary chapter 7 petition for relief (the "Bankruptcy"). [ECF No. 1.] Ronald E. Stadtmueller is named as the Chapter 7 Trustee (the "Trustee"). [ECF No. 5.] Pacifica Encinitas has not filed for bankruptcy.

## III. ARGUMENT

**A. Cause Exists to Grant Relief From Stay**

Movant requests relief from the automatic stay pursuant to 11 U.S.C. § 362[1] to proceed to mediation and, if necessary, to final judgment in the Nonbankruptcy Action against Debtor and a non-debtor entity to liquidate his claim in the Bankruptcy. Section 362(d)(1) authorizes relief from stay to continue to prosecute prepetition litigation against a debtor for "cause."

Whether "cause" exists is assessed on a case-by-case basis. *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also Kronemyer v. Am Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). Courts have identified twelve nonexclusive factors "to consider in deciding whether to grant relief

[1] Unless otherwise noted, all statutory references are to the United States Code, Title 11.

from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, *Id*. (discussing *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984)); *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004) (adopting the *Curtis* factors and recognizing other courts in the Ninth Circuit have done the same).

These factors, known as the *Curtis* factors, include:

> 1. Whether the relief will result in a partial or complete resolution of the issues;
>
> 2. The lack of any connection with or interference with the bankruptcy case;
>
> 3. Whether the foreign proceeding involves the debtor as a fiduciary;
>
> 4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
>
> 5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
>
> 6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
>
> 7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
>
> 8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
>
> 9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
>
> 10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
>
> 11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
>
> 12. The impact of the stay on the parties and the "balance of hurt."

*In re Plumberex Specialty Prod., Inc., Id*. "[N]ot all of the twelve *Curtis* factors are relevant in every case." *Id.* at 560. "Nor is a court required to give each of the *Curtis* factors equal weight in making its determination." *Id.* Nonetheless, "the most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 739 (Bankr. C.D. Cal. 2015) (quoting *In re Curtis*, 40 B.R. at 806).

The party seeking relief from the automatic stay must first establish a prima facie case that "cause" exists; once that showing has been made, the burden shifts to the debtor to demonstrate that relief from the stay is unwarranted. *In re Plumberex Specialty Products, Inc.*, 311 B.R. at 557*; In re Am. Spectrum Realty, Inc.*, 540 B.R. at 736–37.

***1. Curtis Factor 1***

The relief requested will result in a complete resolution of the issues between the Parties. The state court litigation has been pending since May 2024, when Movant was forced to sue Debtor and Pacifica Encinitas after being left stuck on the floor for two days without food, water, medication, or access to a bathroom, all while in significant pain. [Norris Decl., ¶ 5, Ex. B.] Written discovery has already been completed. [*Id*. at ¶ 6.] The Parties engaged in informal settlement negotiations and, in February or early March 2025, agreed to formally mediate the Nonbankruptcy Action to resolve the matter efficiently and minimize fees and costs for all Parties. [*Id*. at ¶¶ 7, 8.] Although Debtor filed for bankruptcy just two months before the scheduled mediation, the Parties had already selected a mediator, Movant has paid the mediation fees, and the Parties have begun preparing. [*Id*. at ¶ 8.] Mediation is scheduled for May 29, 2025. [*Id*.] Moreover, if mediation is unsuccessful, proceeding to judgment will still liquidate Movant's claim; and, given the current posture of the case, it would be more expeditious and cost-effective to prosecute the Nonbankruptcy Action to finality in the existing forum.

"[I]t will often be more appropriate to permit proceedings to continue in their places of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and relieve the bankruptcy court from duties that may be handled elsewhere." *In re Plumberex Specialty Products, Inc.*, 311 B.R. at 557 (italics omitted); *In re Santa Clara Cnty. Fair Ass'n, Inc.*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995) (quoting legislative history of section 362(a), H.R. Rep. No. 95-595, at 341 (1997); S.Rep No. 95-989, at 50 (1978), reprinted in 1078 U.S.C.C.A.N. 5787, 5836).

Moreover, the Nonbankruptcy Action involves multiple parties, including a non-debtor entity, and involves multiple state law causes of action. The Parties have been cooperating for several months to resolve the Nonbankruptcy Action and have been preparing for mediation. This factor weighs in favor of relief from stay.

***2. Curtis Factor 2***

The Nonbankruptcy Action will not interfere with the bankruptcy case. In the chapter 11 case of *Plumberex,* the prepetition district court judgment barred the debtor from making, using, or selling a product that was pertinent to its business operations. The debtor appealed the judgment, while also reorganizing its business operations to market its other products and facilitate a successful reorganization. *In re Plumberex Specialty Products, Inc.,* 311 B.R. at 561-562.

Here, by contrast, Debtor is not seeking to reorganize. Rather, it seeks to discharge its debt, some of which may be owed to Movant. Both mediation and continued litigation relate solely to prepetition claims. Resolution of the Nonbankruptcy Action is well underway, with the Parties engaging in informal settlement discussions for several months. Resolving the Nonbankruptcy Action would also assist in determining bankruptcy issues, e.g., whether Movant has a claim against Debtor, and, if so, in what amount, thus providing the Trustee with a clearer understanding of Debtor's debts and liabilities.

Furthermore, because written discovery has already been completed and the Parties are actively working to resolve the matter, mediation—or, if necessary, litigating to judgment—is unlikely to interfere with the bankruptcy proceedings or consume significant estate resources. This factor weighs in favor of relief from stay.

***3. Curtis Factor 3***

The third factor does not apply. The Nonbankruptcy Action does not involve the Debtor as a fiduciary.

***4. Curtis Factor 4***

The fourth factor does not apply. The Nonbankruptcy Action does not involve a specialized tribunal.

***5. Curtis Factor 5***

The Debtor maintains a general liability insurance policy that may assist with funding mediation and settlement. [Norris Decl., ¶ 9.] This factor weighs in favor of relief from stay.

***6. Curtis Factor 6***

While Debtor does not function as a bailee or conduit for goods or proceeds, the Nonbankruptcy Action involves a non-debtor co-defendant, Pacifica Encinitas. Allowing the Nonbankruptcy Action to proceed maintains fairness to all parties and avoids duplicative proceedings and inconsistent rulings. This factor weighs in favor of relief from stay.

***7. Curtis Factor 7***

The litigation will not prejudice the interests of other creditors, the creditors' committee, or other interested parties. Movant's claim must be liquidated in some forum, and the state court is the most efficient place to do so—the Nonbankruptcy Action involves strictly state law and mediation is scheduled to proceed at the end of May. Permitting the Parties to proceed to mediation/final judgment will provide clarity of Movant's claim and avoid piecemeal litigation. Additionally, at this point, it us unknown how Movant's claim will affect other creditors' claims. Nontheless,

Movant is not seeking to enforce any settlement or judgment against Debtor or Debtor's bankruptcy estate. This factor weighs in favor of relief from stay.

***8. Curtis Factor 8***

The eighth factor does not apply. Movant's state court settlement or judgment is not a claim subject to equitable subordination under § 501(c).

***9. Curtis Factor 9***

The ninth factor does not apply. Neither settlement achieved in mediation, nor a judgment will result in an avoidable judicial lien.

***10. Curtis Factor 10***

The interests of judicial economy and the expeditious and economical determination of litigation for the Parties weigh in favor of relief from stay. The Nonbankruptcy Action has been pending for almost a year, involves California state law, and liability remains undetermined. It is "'more appropriate' for the non-bankruptcy court 'to first determine the non-bankruptcy issues, i.e., whether a claim exists and the damages therein, if any. After such determination, then the bankruptcy issues become relevant.'" *In re Roger*, 539 B.R. 837, 851 (C.D. Cal. 2015) (citing *In re America West Airlines,* 148 B.R. 920, 925 (D.Ariz.1993)). Forcing Movant and Debtor to restart in the bankruptcy court would be an inefficient use of resources and duplicate efforts.

In *Roger*, the debtor filed for Chapter 7 to stay a Texas state court action concerning liability under two loans involving third parties. The plaintiff/creditor moved for relief from stay to liquidate its claim in state court. The case, pending for four years, involved only state law claims, included non-debtor parties, and was set for trial four months after the bankruptcy petition was filed. The creditor argued it should not be forced to litigate piecemeal, as the stay did not apply to the non-debtor defendants. *Roger*, 539 B.R. at 842.

The debtor opposed, claiming it would be prejudicial to the debtor, no "cause" existed, and the Texas action should be litigated in the bankruptcy court because the

claims were closely related to the bankruptcy estate. The trustee also objected, arguing that proceeding in state court would not promote judicial economy, would interfere with asset recovery, and would deplete estate resources through duplicative litigation. *Roger*, 539 B.R. at 843.

The bankruptcy court denied the creditor's motion for relief from stay and the creditor appealed to the district court. The district court reversed, finding the bankruptcy court abused its discretion in finding "cause" did not exist to allow state court litigation pending for four years and was ready for trial, to proceed solely for the purpose of liquidating the amount of the debtor's liabilities. The court emphasized the need to resolve non-bankruptcy issues in the proper forum and found judicial economy favored allowing the state court to adjudicate the claims, especially given the risk of inconsistent rulings and the inefficiency of piecemeal litigation across multiple fora. *Id.* at 851-52.

Similarly, here, although the Nonbankruptcy Action is not yet ready for trial, the trial date is nearing (currently set for August 8, 2025) and the case has proceeded in the ordinary course: written discovery has been completed; the Parties have engaged in settlement negotiations; and mediation has been scheduled since early 2025; with a mediator selected and fees paid. As noted in *Roger*, judicial economy is best served by allowing the Nonbankruptcy Action to reach resolution first, especially since it involves state law issues and a non-debtor entity. *Roger*, 539 B.R. at 851. "A clear congressional policy exists to give state law claimants a right to have claims heard in state court." *In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir.1986); *see also In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 570–71 (Bankr.N.D.Cal.2002) (where "state law issues predominate over bankruptcy issues" and where claimants "commenced litigation in state court prior to the petition date," abstention is favored).

Additionally, courts in the Ninth Circuit have permitted relief from stay "when necessary to permit pending litigation to be concluded in another forum if the non-

bankruptcy suit involves multiple parties or is ready for trial." *In re Plumberex Specialty Products, Inc.*, 311 B.R. at 556. Here, the Nonbankruptcy Action involves Pacifica Encinitas, a non-debtor third party. Continuing with mediation and, if necessary, trial, would avoid unnecessary costs and duplicative efforts. This factor weighs in favor of relief from stay.

***11. Curtis Factor 11***

As previously analyzed, the Nonbankruptcy Action is well underway: written discovery is complete, and the Parties desire and are prepared to resolve the case through mediation. If mediation does not result in a resolution, the case is scheduled for trial on August 8, 2025. This factor weighs in favor of relief from stay.

***12. Curtis Factor 12***

The impact of the stay on the parties and the "balance of hurt" weighs in favor of relief from stay. Unlike in *Plumberex,* a settlement or a judgment will not impact any reorganization efforts of Debtor. *In re Plumberex Specialty Products, Inc.*, 311 B.R. at 564. Debtor is seeking solely to discharge its debts. Debtor will incur attorneys' fees and costs in mediating and litigating the Nonbankruptcy Action, but these expenses would be incurred in the bankruptcy court as well. Liquidating Movant's claim is essential for the estate's administration.

Conversely, without relief from stay, Movant and Debtor's fees and costs would be higher, as the Movant and Debtor would be forced to relitigate the Nonbankruptcy Action—which involves only state law claims—in the bankruptcy court, despite it being well-positioned for settlement. Additionally, the Nonbankruptcy Action involves Pacifica Encinitas, a non-debtor entity not part of the bankruptcy proceedings. Lastly, given Movant's advanced age and deteriorating health, it is imperative that the Nonbankruptcy Action be resolved quickly, as Movant's ability to provide testimony in deposition or at trial may soon become compromised.

The "balance of hurt" weighs in favor of relief from stay. Movant agrees that the stay will remain in effect as to enforcement of any resulting settlement or judgment against Debtor or the bankruptcy estate.

Accordingly, an analysis of the *Curtis* factors reveals that eight factors are applicable, including "the most important factor in determining whether to grant relief from the automatic stay," and demonstrate that "cause" exists to grant relief from stay. *Curtis*, 40 B.R. at 806.

## IV. CONCLUSION

Based on the foregoing, Movant respectfully requests this Bankruptcy Court grant the Motion and enter an order granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) as to Movant, his successors, transferees, and assigns, and as to Debtor and Debtor's bankruptcy estate so Movant may proceed in the Nonbankruptcy Action to mediation and, if necessary, to final judgment (including any appeals by any party to the litigation) in accordance with applicable nonbankruptcy law in order to liquidate his claim.

DATED: April 28, 2025

ROBBERSON SCHROEDTER LLP

By: */s/ Lane C. Hilton*

MARY R. ROBBERSON, ESQ.
MAGGIE E. SCHROEDTER, ESQ.
LANE C. HILTON, ESQ.
Attorneys for Creditor,
STEVEN ALPER