# EXHIBIT A

EXHIBIT A

Dave A. Fox, Esq. (SBN: 254651)
Brett Norris (SBN 224875)
**FOX LAW, APC**
201 Lomas Santa Fe Dr., Suite 420
Solana Beach, CA 92075
Telephone: (858) 256-7616/Fax: (858) 256-7618

Attorneys for Plaintiff Steven Alper

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**05/06/2024** at 09:39:24 AM
Clerk of the Superior Court
By Mariejo Guyot,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

STEVEN ALPER, an individual,

Plaintiff,

vs.

PACIFICA COMPANIES, LLC; PACIFICA SENIOR LIVING, LLC, PACIFICA SENIOR LIVING MANAGEMENT, LLC and DOES 1 to 50,

Defendants.

Case No. 37-2024-00020969-CU-PO-CTL

**COMPLAINT FOR DAMAGES:**

1. **NEGLIGENCE**
2. **ELDER ABUSE – VIOLATION OF THE ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT [Welf. & Inst. Code §15657]**

**[DEMAND FOR JURY TRIAL]**

## I. INTRODUCTION

1. Plaintiff Steven Alper was a resident of defendant Pacifica Senior Living LLC in Encinitas, California.[1] Mr. Alper was a retired 71 year old psychotherapist who lived in an Independent Living unit at Pacifica.

2. Pacifica advertises that they "are committed to bringing residents the best possible care, defined by compassion, dignity, and understanding." Pacifica also claims "[o]ur residents' experience

[1] Pacifica Senior Living LLC, its parent company defendant Pacifica Companies LLC, and defendant Pacifica Senior Living Management LLC, are collectively referred to herein as "Pacifica."

is our top priority." At a bare minimum, Pacifica had a duty to monitor and ensure the general health, safety, and well-being of its residents.

3. Pacifica did not treat Mr. Alper with "compassion, dignity, and understanding." And Pacifica utterly failed to monitor and ensure his safety. Instead, Pacifica abandoned Mr. Alper. On May 16, 2022, Mr. Alper fell to the floor in his room, pinned to the railing of his bed and could not get off the floor. Pacifica left him alone, lying on the cold, hard floor for more than two days. Mr. Alper had no food, no water, and no medical care. When Pacifica's staff finally checked on Mr. Alper, he was badly malnourished, covered in his own urine and excrement, and had pressure sores all over his body.

## II. PARTIES

4. Plaintiff Steven Alper is, and at all relevant times was, a resident of San Diego County in the State of California. Plaintiff was 71 years old when neglected, abandoned, and abused by Pacifica.

5. Defendant Pacifica Senior Living LLC is a senior living community with more than 90 locations throughout the United States, including Encinitas, California where Plaintiff lived and the incident that is the subject of this lawsuit occurred.

6. Plaintiff is informed and believes and thereon alleges that defendant Pacifica Companies, LLC is the parent company of Pacifica Senior Living LLC. Plaintiff is informed and believes and thereon alleges that defendant Pacifica Companies LLC's corporate headquarters is in San Diego County at the same location as its subsidiary Pacific Senior Living LLC.

7. Plaintiff is informed and believes and thereon alleges that defendant Pacifica Senior Living Management, LLC is a company that manages and controls defendant Pacific Senior Living LLC. Plaintiff is informed and believes and thereon alleges that defendant Pacifica Senior Living

Management LLC's corporate headquarters is in San Diego County at the same location as the other Pacifica defendants identified above.

8. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1-50, inclusive, and each of them, are unknown to Plaintiff, who thereby sues these defendants by fictitious names, and will ask leave of this Court to amend this complaint when the true names are ascertained. Plaintiff is informed and believes that each defendant named herein as a Doe is responsible in some manner for the events and happenings referred to herein which proximately caused injury to Plaintiff.

9. Plaintiff is further informed and believes and on that basis alleges that at all times mentioned herein Defendants, and each of them, were the agents, servants, employees, and/or joint ventures, and were as such acting within the course, scope and authority of such agency and employment and or joint venture, and that each and every defendant, when acting as a principal, was negligent and reckless in the selection, hiring, entrustment and supervision of each and every other defendant as an agent, servant, employee, or joint venturer.

10. Plaintiff is further informed and believes and on that basis alleges that at all times mentioned herein that there is such a unity of interest and ownership between the Defendants such that separate personalities do not exist and should be disregarded to prevent an inequitable result that would follow if the wrongful acts of each Defendant were treated as if done by separate and distinct entities.

11. Venue is proper is in this Court because the incident occurred in this County.

12. Jurisdiction is proper in the Court because Plaintiff and Defendants are California residents and/or incorporated and/or doing business in California.

## III. FACTUAL BACKGROUND

13. Plaintiff Steven Alper is a retired psychotherapist. He lived with bipolar disorder for much of his adult life and in 2021 he was diagnosed with early-onset Alzheimer's disease. Mr. Alper

managed the progression of these conditions well and maintained an active and social lifestyle. In particular, he enjoyed hiking and spending time with his family.

14. In the spring of 2021, Mr. Alper moved into Pacifica Senior Living in Encinitas. Pacifica had three levels of care: (i) Independent Living, (ii) Assisted Living, and (iii) Respite Care. Pacifica assigned Mr. Alper to the lowest level of care, Independent Living, where he remained until May 2022 when the incident that is the subject of this action occurred.

15. Mr. Alper and his family chose Pacifica because it provided them the peace of mind that Pacifica's staff would be present on the premises to monitor and ensure Mr. Alper's general health, safety, and well-being on a daily basis.

16. On Monday, May 16, 2022, Mr. Alper was in his room at Pacifica when he began to feel light-headed. He leaned against the metal railing of his bed and then slowly lowered himself to the floor. As he lowered to the floor, his arm became stuck in the bed railing. Mr. Alper was unable to free himself or get up from the floor.

17. Mr. Alper tried to push the emergency call button in his room, but he could not reach it. With no other option, Mr. Alper began calling out for help. He yelled for help hour after hour. But no one responded to his calls for help.

18. The following day, Tuesday May 17, 2022, came and went without a single person checking in on or helping Mr. Alper. Despite his continued calls for help throughout the day, no one responded to his pleas for help. Abandoned on the floor of the room, Mr. Alper drifted in and out of consciousness. His left arm, stuck in the bed railing, ached with intense pain. As time passed unattended, Mr. Alper developed pressure wounds on his arm, chest, knees, and face. Trapped and pinned to the floor next to his bed, Mr. Alper could not get to the restroom. He was left alone on the floor to urinate and defecate on himself.

19. On Wednesday, May 18, 2022 – about 48 hours after he first yelled for help and this nightmare began – Pacifica's staff finally checked on Mr. Alper and found him lying on the floor with his arm still trapped in his bed railing.

20. Mr. Alper was immediately rushed to Scripps Memorial Hospital Encinitas in acute medical distress. Doctors diagnosed him with multiple medical conditions, including: rhabdomyolysis, "failure to thrive" (i.e., malnourished and dehydrated), fractured nasal bone, sprained cervical anterior longitudinal ligament, compression fracture of the vertebral column, swollen left eye, and multiple pressure sores on his face, right shoulder, left arm, knees, ankles, scrotum, upper abdomen, and right hand.

21. Shortly after discharge from the hospital, Mr. Alper had to be re-admitted to Sharp Grossmont Hospital for complaints of pain from the pressure wound on his left arm because it was infected and "oozing of puss."

22. In addition to the severe physical injuries, the trauma from this incident caused a marked decline in Mr. Alper's cognitive status. He is no longer able to live independently and now must live in a skilled nursing facility. Pacifica's physical abuse, neglect, and abandonment took precious years of an independent, active life from Mr. Alper.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

**(Plaintiff Against All Defendants)**

23. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

24. Defendants had a basic duty to monitor the activities of its residents to ensure their general health, safety, and well-being. This includes the duty to provide residents like Plaintiff the right to safe and healthful living conditions and the right to be free from neglect or mental and physical

abuse. Similarly, Defendants had a duty to Mr. Alper, as a resident of it senior living community, to ensure his right to live in a safe physical environment.

25. As alleged above, Pacifica breached this duty as to Plaintiff. When Plaintiff fell, Pacifica left him alone on the floor of his room for approximately two days and perhaps longer. Pacifica ignored his pleas for help. No member of its staff even bothered to check on him. Therefore, Defendants breached their general duty of due care to Plaintiff.

26. Defendants' negligence is a substantial factor in causing Plaintiff's injuries, which persist until this day. Before this incident, Plaintiff lived and functioned independently and did not suffer from any of the injuries caused by Defendants' negligence such as the rhabdomyolysis, malnutrition, dehydration, cervical spine ligament injuries and fractures, or severe pressure ulcers. Plaintiff's cognitive deficits caused by this incident have not improved.

27. As a result of Defendants' negligence, Plaintiff has suffered damages in amount that that will be determined according to proof at trial.

## SECOND CAUSE OF ACTION

## ELDER ABUSE – VIOLATION OF THE ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT

**[Welf. & Inst. Code §15657]**

**(Plaintiff Against All Defendants)**

28. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

29. The Elder Abuse and Dependent Adult Civil Protection Act (the "Elder Abuse Act") defines "abuse of an elder" as including "physical abuse, neglect, financial abuse, abandonment, isolation, abduction or other treatment with resulting physical harm or pain or mental suffering. . . ." [Welf. & Inst. Code §15610.07(a)(1)]

30. Plaintiff is entitled to protection and the remedies afforded by the Elder Abuse Act because plaintiff was older than 65 years of age at the time of the incident, and Defendants conduct alleged in this Complaint constitutes physical abuse, neglect, and/or abandonment under the statute.

31. The Elder Abuse Act defines "physical abuse" to include the "prolonged or continual deprivation of food or water." [Welf. & Inst. Code §15610.63(d)] As alleged in this Complaint, Defendants deprived Plaintiff of food and water for approximately two days while he lay, abandoned, on the floor of his room.

32. The Elder Abuse Act defines "neglect" as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." [Welf. & Inst. Code §15610.57(a)(1)] Further the statute provides that neglect includes, but is not limited to, "[f]ailure to prevent malnutrition or dehydration." [Welf. & Inst. Code §15610.57(b)(4)]

33. As alleged in this Complaint, Defendants failed to exercise the degree of care that a reasonable person in Defendants' position would exercise by failing to check on Plaintiff or respond to his pleas for help. By failing to check in on Plaintiff to ensure his general health, safety and well-being, Defendants failed to prevent Plaintiff from suffering harm, including malnutrition and dehydration, when he was left alone on the floor of his room for approximately two days.

34. The Elder Abuse Act defines "abandonment" as "the desertion or willful forsaking of an elder or a dependent adult by anyone having care or custody of that person under circumstances in which a reasonable person would continue to provide care and custody." [Welf. & Inst. Code §15610.05] As alleged in this Complaint, Defendants deserted Plaintiff by leaving him on the floor of his room for two days when a reasonable person would have continued to provide the care and custody by checking on him and ensuring he had food, water and appropriate medical care.

35. Defendants' acts and omissions in violating the Elder Abuse Act are a substantial factor in causing Plaintiff's injuries, which persist until this day. Before this incident, Plaintiff did not suffer from any of the injuries caused by Defendants' misconduct, including rhabdomyolysis, malnutrition, dehydration, cervical spine ligament injuries and fractures, or severe pressure ulcers. Plaintiff's cognitive deficits caused by this incident have not improved.

36. Further, Defendants acted with recklessness because Defendants knew or should have known it was highly probable that their conduct alleged in this Complaint would cause harm; yet Defendants consciously disregarded this risk.

37. As a result of Defendants' violations of the Elder Abuse Act, Plaintiff has suffered damages in amount that that will be determined according to proof at trial. Plaintiff is also entitled to recover the enhanced remedies provided in the Elder Abuse Act, which include costs and attorneys' fees.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants and each of them as follows:

1. General damages including damages for pain and suffering and mental and emotional distress, in an amount to be determined at the time of the trial;

2. Special damages including damages for past and future medical care and other economic losses in an amount to be determined at the time of the trial;

3. Attorneys' fees;

4. Prejudgment interest as permitted by law and according to proof;

5. Costs of suit; and

6. Such other and further relief as the Court deems proper.

/ / /

/ / /

**JURY DEMAND**

Plaintiff Steven Alper hereby demands a jury trial on all legal causes of action that are triable to a jury.

Dated: May 6, 2024

**FOX LAW, APC**

Dave Fox
Brett Norris
Attorneys for Plaintiff Steven Alper