ROSS, WOLCOTT, TEINERT & PROUT LLP
3151 Airway Avenue, Building E
Costa Mesa, California 92626
ANDREW G. PROUT, Bar No. 287325
CHRISTOPHER S. SKINNER, Bar No. 342830
Tel: (714) 444-3900
AGP@RossLLP.com
CSkinner@RossLLP.com

Special Counsel for Plaintiff Ronald E.
Stadtmueller, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA DIVISION

| | |
|---|---|
| In re:<br><br>Pacifica Senior Living LLC dba Pacifica Senior Living Management LLC,<br><br>               Debtor. | Case No. 25-01107-CL7<br><br>Chapter 7<br><br>**DECLARATION OF TRUSTEE RONALD E. STADTMUELLER IN SUPPORT OF EX PARTE APPLICATION FOR ORDER UNDER RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR PRODUCTION OF DOCUMENTS BY U.S. BANK NATIONAL ASSOCIATION AND BANK OF AMERICA, N.A.**<br><br>Dept:    1<br>          U.S. Bankruptcy Court<br>          325 West "F" Street<br>          San Diego, CA 92101-6991<br>Judge:  Hon. Christopher B. Latham |

I, Ronald E. Stadtmueller, declare as follows:

1.      I am the Chapter 7 Trustee for Pacifica Senior Living LLC dba Pacifica Senior Living Management LLC. I have personal knowledge of the facts set forth in this declaration except those allegations presented on information and belief and, if called and sworn as a witness, I would be competent to testify to the information contained herein.

2.      I make this declaration in support of the Ex Parte Application ("Application") to the Court for an order permitting the Trustee, under Rule 2004 of the Federal Rules of Bankruptcy Procedure, authorizing the issuance of a subpoenas to U.S. Bank National Association and Bank of America, N.A.

3.      On March 24, 2025, a voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) was by the Debtor in the United States Bankruptcy Court for the Southern District of California. I was appointed interim Chapter 7 Trustee and became permanent Trustee at the first meeting of creditors held on April 29, 2025.

4.      The Debtor was in the business of managing dozens of senior living communities throughout the United States.

5.      The relationship between the Debtor and the senior living communities was governed by management agreements. A copy of one of the management agreements is attached hereto as **Exhibit A**. This management agreement is between the Debtor and Pacifica East Lake LLC, which is a senior living community located in Vista, California.

6.      These management agreements provided that the senior living communities paid a monthly management fee for the Debtor's services, and the management fee paid to the Debtor was a percentage of the senior living communities' gross revenues. **Exhibit A** at PSLM002881.

7.      On January 28, 2026, special counsel Christopher S. Skinner and his firm Ross Wolcott Teinert & Prout LLP received a production of documents from

U.S. Bank. This production consisted of the Debtor's bank statements and all checks deposited into the Debtor's bank accounts since 2021.

8.    To calculate the exact amount of unpaid management fees and performance bonuses, it is necessary that we subpoena U.S. Bank and Bank of America (the two banks where I understand that the senior living communities had accounts) for the production of each senior living community's bank statements and copies of checks deposited therein since 2020.

9.    As a result, I seek an order from this Court for the production of documents from U.S. Bank and Bank of America.

Executed this 11th day of February, 2026, at San Diego, California, under penalty of perjury pursuant to the laws of the United States of America.

*/s/ Ronald E. Stadtmueller*
Ronald E. Stadtmueller

# Exhibit A

## MANAGEMENT AGREEMENT

This Management Agreement (this "**Agreement**") is made and entered into as of December 1, 2018 ("**Effective Date**") by and between Pacifica East Lake LLC ("**Owner**"), and Pacifica Senior Living LLC ("**Manager**") with regard to the following facts and circumstances:

## R E C I T A L S

**WHEREAS**, Owner has acquired the real estate, the improvements located thereon and certain personal property located thereon constituting a senior living facility known as "Pacifica Senior Living Vista" located at 760 East Bobier Drive, Vista, California 92084 (collectively, the "**Property**").

**WHEREAS**, Manager, both individually and through affiliated entities, develops, manages, and operates assisted living and similar facilities. The Property, when operated and managed as a fully licensed and authorized assisted living or similar facility, is referred to herein as the "**Facility**".

**WHEREAS**, Owner wishes to engage Manager to manage the Facility for and on behalf of Owner.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein, the parties agree as follows:

## A G R E E M E N T S

1. **Appointment of Manager.**

Subject to the terms of this Agreement, Owner delegates to Manager as its agent and independent contractor, and Manager accepts, those expressly delegated rights, powers and authorities of Owner with respect to the operation and management of the Facility, with full power and authority in the name of and on behalf of Owner, to do and perform all activities, transact business, make, execute, acknowledge and deliver all contracts, licenses, leases and other writings and instruments of every kind which may be required, proper, or convenient to operate and manage the Facility with the same validity as if performed or executed by Owner. As exclusive agent for the management of the Facility, Manager accepts this appointment, subject to the terms of this Agreement. Manager shall have no ownership, possessory, or leasehold interest in any of Owner's real or personal property constituting (or acquired in connection with) the Facility.

2. **Manager's Representations, Covenants and Responsibilities.**

    a.    <u>Manager's Representations and Covenants.</u>  Manger hereby represents, warrants and covenants to and in favor of Owner the following:

   (i)    Manager is a limited liability company, duly organized, validly existing and in good standing under laws of Delaware, having its principal offices at San Diego, CA. Manager shall, upon Owner's request, obtain and furnish to the Owner satisfactory evidence as to the foregoing at Manager's expense and as a condition precedent to Owner completing any obligation of Owner under this Agreement.

   (ii)    This Agreement, when executed by Manager, shall be a valid and legally binding obligation of Manager, enforceable in accordance with its terms.

   (iii)    Each individual executing this Agreement on behalf of Manager has full power and authority to do so and that no provision of any of Manager's governing documents

PSLM002867HIGHLY CONFIDENTIAL

prevents Manager from entering into this Agreement and conducting the activities and actions required of Manager under this Agreement.

 (iv) There is no litigation, proceeding or governmental investigations pending or threatened against the Manager which could adversely impact the Owner, the Facility or the Manager.

 (v) Manager has submitted and shall maintain, in the name of the Owner, at all times during the effectiveness of this Agreement all licenses, certificates, permits and other governmental approvals necessary to operate and manage the Property as a fully licensed and authorized assisted living or similar facility.  Manager shall, upon Owner's request, obtain and furnish to the Owner satisfactory evidence as to the foregoing and as a condition precedent to Owner completing any obligation of Owner under this Agreement.

 (vi) Manager agrees not to enter any new Consulting or Management Agreements during the first twelve (12) months of this agreement on any type of Senior Housing Facility within fifteen (15) miles of the Property.

 b. <u>Management Standards</u>.  Manager agrees to devote its reasonable best efforts to managing the Facility, to supervise all employees of Manager, to indirectly (through supervision of Facility supervisors) supervise all Facility Employees (defined below), to exercise professional skill and competence while performing the duties set forth in this Agreement, and to act in a manner consistent with prudent business practices customary in the industry.

## 3. <u>Owner's Representations, Covenants and Responsibilities.</u>

 a. <u>Owner's Covenants</u>.  Owner hereby represents, warrants and covenants to and in favor of Manger the following:

 (i) Owner is a limited liability company, duly organized, validly existing and in good standing under laws of California.

 (ii) This Agreement, when executed by Owner, shall be a valid and legally binding obligation of Owner, enforceable in accordance with its terms.

 (iii) Each individual executing this Agreement on behalf of Owner has full power and authority to do so and that no provision of any of Owner's governing documents prevents Owner from entering into this Agreement and conducting the activities and actions required of Owner under this Agreement.

 (iv) There is no litigation, proceeding or governmental investigations pending or threatened against the Owner which could adversely impact the Owner, the Facility or the Manager.

 (v) Owner has the power and authority and has obtained the all licenses, certificates, permits and other governmental approvals necessary to own the Facility.

## 4. <u>Manager's Services.</u>

Manager shall begin providing the following services as of the Effective Date: December 1, 2018.

2

PSLM002868HIGHLY CONFIDENTIAL

a.    Manager's General Services.  Manager shall oversee the day-to-day operation of the Facility. Manager shall hire and supervise, if necessary, all on-site administrative personnel and shall meet regularly with the Administrator (as defined below) and department heads of the Facility.  Manager shall coordinate and monitor all surveys and reviews of the Facility.  Manager shall implement and maintain marketing, resident services and quality assurance programs for the Facility.  Manager shall use its best efforts to ensure the proper supply and scheduling of services to be provided at the Facility, including without limitation, dietary and food, housekeeping, maintenance, repairs and security.

b.    Staffing.  Manager shall develop and furnish to Owner copies of all departmental budgets for on-site personnel, including staffing and wages.  All on-site personnel shall be employees of Owner or a Professional Employer Organization (PEO) designated by Pacifica East Lake LLC, (such on-site personnel employees shall hereinafter be referenced to as "Facility Employees"), and the direct expenses of such Facility Employees (including wages, salaries, benefits and payroll taxes) shall be directly paid from the Project Operating Account (as defined herein) to the extent provided in the Approved Budget (as defined herein). Manager shall oversee all employees, including but not limited to all Facility Employees payroll and benefits (including payroll taxes), distribute employee income tax withholding forms at the end of each year, prepare payroll tax returns for said employees, and make payment of such taxes.  All other personnel that provide services at the Facility from time to time shall be independent contractors under separate services agreements as approved by Owner and as included in the Approved Budget. Manager will not charge for any regional supervisor or a non facility employee that is not working directly at the facility without prior Owner approval.

(i)    Manager shall, during the term hereof, hire or approve and provide direction to the qualified administrator (the "**Administrator**") and a qualified Assistant Administrator if such a position is appropriate for the administration of the Facility.

(ii)    Manager shall establish salaries, employee benefits, and personnel policies and standards applicable to Facility Employees as needed and in line with the Approved Budget during the term of this Agreement.

c.    Marketing.  Manager (or a qualified third party selected and supervised by Manager) shall review, approve and implement with Owner a marketing program consisting of advertising, public relations and related activities designated to maintain and enhance the resident census at the Facility.  The expenses for all such items shall be expenses of the Facility and shall be within the Approved Budget provided for such expenses.

d.    Financial Records and Reports.  Manager shall have the following responsibilities with respect to records and reports:

(i)    Manager shall establish and maintain a system of records and books consistent with industry standards and applicable law and satisfactory to Owner.  Copies of all records, books, and accounts shall be maintained at the Manager's central offices or the Facility and will be provided to Owner upon request.  The originals of all books, records, and accounts shall be maintained at Manager's central offices or the Facility and shall be subject to examination at said location at all reasonable times by any authorized representative of Owner; Manager shall retain all books and records for the time period required under any applicable law or regulation or, with Owner's written approval, surrender such books and records to Owner prior to the expiration of such period.

(ii)    Upon the request of Owner, Manager shall cause a financial audit to be prepared by Owner's Certified Public Accountant ("CPA"), or another person designated by Owner.

3

PSLM002869HIGHLY CONFIDENTIAL

and reasonably approved by Manager, for such fiscal years ending during the term of this Agreement as Owner shall designate. Such audit shall be prepared in accordance with generally accepted accounting principles. Compensation for the CPA's services shall be paid by the Owner and will not be considered an expense of the Facility. Owner shall insure the preparation of all tax and corporate records which Owner is required to file by any federal, state or local governmental agencies.

(iii)    Manager shall prepare monthly financial reports comparing actual to budgeted financial projections in a format mutually agreed upon by Manager and Owner. Manager shall submit each report to Owner within twenty (20) days after the end of each preceding month, with exception to year end which will be submitted by February 15th;

(iv)    Manager shall prepare an itemized list of all delinquent resident accounts on a monthly basis (e.g., a Rent Roll or Period Summary) and shall submit this report to Owner within thirty (30) days after the end of the preceding month; Manager shall submit a weekly census and marketing report to Owner

(v)    Manager shall furnish Owner with a statement of receipts and disbursements during the previous month, along with a schedule of accounts receivable and payable and reconciled bank statements for the Project Operating Account, within thirty (30) days after the end of the preceding month.

(vi)    Manager shall prepare occupancy reports comparing actual to budgeted projections in a format mutually agreed upon by Manager and Owner on a monthly basis and at any other time upon Owner's request. Manager shall submit each occupancy report to Owner within fifteen (15) business days after the end of each preceding month, with exception to year end which will be submitted by February 15th. Each such report shall be certified by Manager to Owner as being true, correct and complete.

(vii)    Manager shall prepare and provide to the appropriate authorities on a timely basis, all records, certifications and reports that Owner is required to prepare and submit as required by law or as a condition of any financing. Owner will provide to Manager a detailed list of all required lender reports.

e.    <u>Resident Records and Reports.</u>  The originals of all resident records and reports (including without limitation of medical records), shall be maintained at the Facility. Manager may maintain copies of said records as necessary.

f.    <u>Budgets.</u>  Any annual budget for the facility must be approved of by the Owner, such budget the "**Approved Budget**". Each year during the term of this Agreement, Manager shall prepare a detailed annual budget for the Facility, which budget shall be segregated between operating and capital budget amounts. Manager shall submit such annual budget to Owner by December 1 of each year in a format mutually agreed upon by Owner and Manager. Owner shall give its approval or its disapproval of Manager's proposed budget or any portion thereof not later than thirty (30) days after receipt with respect to each calendar year. If approved by Owner pursuant to this Section 4(f), the budget shall be used for the next calendar year, replace any existing "Approved Budget", and shall be referred to as the "**Approved Budget**". If Owner fails to inform Manager of its objections to any proposed budget within thirty (30) days after receipt, the proposed budget and budget format shall be adopted for the following calendar year and shall be deemed to be the "**Approved Budget**". If Owner objects to all or any portion of the proposed budget, Owner shall furnish Manager with the reasons for the objections and Owner and Manager shall attempt to reach agreement with respect to the items to which

4

PSLM002870HIGHLY CONFIDENTIAL

Owner objects.  In the event the parties cannot agree upon the budget prior to the commencement of the next calendar year, the Facility shall be operated under a combination of (i) the then existing Approved Budget as to the items which Owner objects, subject to a percentage increase, for each expense item, equal to the change during the preceding twelve (12) months in the Consumer Price Index for All Urban Consumers (In the CPI-U relative to the Facility) (provided, however, that any expense item not within the control of Manager, including, but not limited to, utilities, shall be adjusted upward, if at all, to an amount equal to the total amount expended for each such expense item during the prior calendar year), and (ii) the portion of the proposed budget as to the items to which Owner does not object (collectively, the "**Approved Budget**").  Manager shall keep Owner informed of any matters or events that will or would likely result in material deviations from the receipts or disbursements stated in the Approved Budget (each such matter or event, a "**Material Matter**").  If at any time during the calendar year a Material Matter arises, Owner may modify the Approved Budget.  Notwithstanding the foregoing provisions of this Section 4(f), Manager shall deliver to Owner a proposed budget for the 2019 calendar year on or before March 15 2019, which Owner shall review for its approval or disapproval within 15 days thereafter and if approved (as modified by Owner) shall be the "**Approved Budget**" for the remainder of calendar year 2019.

g.　　Purchasing.  Manager shall arrange the purchase of all budgeted or Owner authorized inventories, provisions, supplies, and operating equipment necessary for maintenance and operation of the Facility.

h.　　Tax and Other Reporting.  Manager shall assist Owner as requested by Owner in the timely preparation, execution and filing by Owner and/or Manager, all reports, tax returns (except federal, state, and local income tax returns of Owner), and other documents required by the jurisdiction of the Facility, to operate the Facility, including, but not limited to, business tax returns, gross receipts tax returns, and licensing forms. Owner shall be responsible for the costs associated with the preparation of any reports required under this section.

i.　　Responsibility for Expenses:  Owner shall be solely responsible for any local, state and federal taxes, costs and assessments and all other costs and expenses imposed on the Facility of any kind associated with the Facility, and Manager shall have no liability or obligation with respect thereto.  Owner agrees that Manager shall not, by entering into and performing under this Agreement, become liable for any of the future obligations, liabilities or debts of the Facility or Owner.  Owner understands that Manager is solely working as an agent of Owner and in that role Manager does not assume any liability for Owner's business.  Nothing contained herein shall excuse Manager from responsibility for the consequences of its gross negligence or willful misconduct.

j.　　Sub-Agreements.  Manager shall enter into contracts in the name of and at the expense of Owner for the furnishing to the Facility of electricity, gas, water, steam, telephone, cleaning services, vermin extermination services, elevator and boiler maintenance if applicable, heating and air conditioning maintenance, cable and/or master television antennas, and other utilities or services, all as necessary and appropriate, and purchase all materials and supplies in the name of, and for the account and at the expense of Owner within approved budgetary limitations.  Subject to any restrictions contained within Section 7 of this Agreement, Manager shall have the right to negotiate and enter into agreements with concessionaires and licensees of the Facility, in the name of and for the benefit of Owner.  All such agreements shall be in writing and must conform to the limits of the Approved Budget for such goods or services.  Manager shall not enter into or renew any collective bargaining agreement that would be binding upon Owner without the prior written approval of Owner.  Manager shall ensure that any subcontractors working on or about the Facility, as well as all contractors doing work at the Facility (i) carry and maintain in full force and effect commercially reasonable insurance, including without limitation Workmen's Compensation coverage, and (ii) obtain and maintain in full

PSLM002871HIGHLY CONFIDENTIAL

force and effect any licenses, permits or approvals that may be required, and (iii) shall name the Owner and Manager as additional insureds.

      k.    <u>Maintenance and Repair.</u>  Within Approved Budget limitations, Manager shall cause the Facility to be maintained and repaired, at Owner's expense, in accordance with all applicable State and local statutes, ordinances and codes, and in a condition at all times acceptable to Owner.  Manager shall be obligated to take the foregoing action only to the extent that there are adequate funds available therefore.  Maintenance and repair activities shall include but not be limited to, cleaning, painting, decorating, plumbing, electrical, HVAC, appliances, carpentry, grounds care, and such other maintenance and repair work as Manager may deem reasonably necessary, subject to any reasonable limitations imposed by Owner.  Within the Approved Budget limitations, Manager shall arrange for the making or installing, at Owner's expense and in the name of Owner, of such alterations, repairs, decorations or replacements of equipment, at the Facility as Manager deems reasonable or necessary, subject to Owner's approval which shall not be unreasonably withheld.  Additional provisions with respect to the Facility's maintenance are:

      (i)    Manager shall devote special attention to preventative maintenance and, to the extent feasible, use the services of Facility Employees.

      (ii)    Manager shall contract with the qualified independent contractors for the maintenance and repair of heating and air-conditioning systems and elevators, and for ordinary and extraordinary repairs of the Facility beyond the capability of Facility Employees.

      (iii)    Manager shall systematically and promptly investigate all service requests received from residents, take responsible action on such requests, and keep records of the same.  Residents' emergency requests for service shall be attended to within twenty-four (24) hours of receipt by Manager.  Complaints that Manager believes are serious, in the reasonable exercise of its discretion, and complaints about which Owner specifically inquires shall be reported promptly to Owner after Manager's investigation.

      (iv)    Owner recognizes the necessity of replacement of furnishings and equipment at the Facility and other ordinary capital replacement items (collectively **"Capital Replacements"**).  Owner agrees to expend such amounts for Capital Replacements, which have been previously approved by the Owner in the Approved Budget, as shall be required in the normal and ordinary course of operation of the Facility, to operate the Facility in accordance with Manager's reasonable recommendations and to renovate, modernize and improve the Facility as may become necessary.  Manager shall make recommendations to Owner regarding the design of Capital Replacements and, if approved, manager shall supervise installation of Capital Replacements in accordance with such approval. If the total cost any repair, renovation or capital improvement is in excess of $15,000, and the Owner elects to have the Manager supervise said repair, renovation or capital improvement, the Owner shall be responsible for paying the Manager an amount equal to 15% of the total cost for repair/renovation/capital improvement for oversight.

      (v)    Manager shall make, or cause to be made, all improvements and repairs that are reasonably necessary to maintain the Facility's licensure at Owner's expense and such expenditures shall be included in the Approved Budget or any modification thereof.  For Manager shall obtain the prior approval of Owner before committing to any such expense

PSLM002872HIGHLY CONFIDENTIAL

exceeding five thousand dollars ($5,000.00) that is not included in the Approved Budget, which consent or approval shall not be unreasonably withheld or delayed. Notwithstanding any other provision of this Agreement, Manager shall be entitled without Owner's prior consent to make unbudgeted expenditures regardless of the amount for the purpose of emergency repairs involving danger to persons or the Facility, recurring expenses within the limits of the Approved Budget, or expenditures that are required to avoid suspension of any necessary service at the Facility. Owner will be notified of any such emergency expenditure within forty-eight (48) hours following the expenditure.

(vi)   Manager may institute, with the prior concurrence of Owner, in the name of Owner, at the expense of Owner, any necessary legal actions or proceedings to collect obligations owing to the Facility or to cancel or terminate any contract with the Facility for breach thereof or default thereunder.

(vii)  Facility Employees responsible for maintenance, will at all times be familiar with the character, location, construction, layout, plan and operation of the Facility, including the electrical, heating, plumbing, air conditioning and ventilating systems, elevators and all other mechanical equipment.

l.    Compliance with Laws.  Manager shall use its best efforts to comply with all applicable federal, state and local laws pertaining to ownership, use or occupancy of the Facility; provided, however, that if Owner is the only entity capable of performing the activities required to achieve compliance or if funds are not available for Manager to take the actions necessary to achieve compliance, Manager shall not be liable under this Agreement for failing to take such action.

m.    Insurance.

(i)    Manager shall furnish Owner with certificates of insurance evidencing any required coverage and any renewals thereof that Manager obtains on behalf of Owner. All insurance policies obtained pursuant to this Agreement shall provide for a minimum of thirty (30) days' notice to both Owner and Manager in the event of cancellation, new renewal or material modification;

(ii)   All insurance policies shall provide that the insurance companies shall have no right of subrogation against either the Owner or Manager, or their respective agents or employees including but not limited to Facility Employees, to the extent permitted by the insurers; and

(iii)  Owner shall maintain at expense of the Facility as included in the Approved Budget, all of the following coverages: (A) CGL coverage of at least one million dollars ($1,000,000) per occurrence and three million ($3,000,000) in the aggregate and five million dollars ($5,000,000) in the aggregate overall; (B) Fire and Casualty coverage for the full replacement cost of the Facility; (C) Professional Liability coverage of at least one million dollars ($1,000,000) per occurrence and three million ($3,000,000) in the aggregate and five million dollars ($5,000,000) in the aggregate overall; (D) employee, including but not limited to Facility Employees, dishonesty coverage (blanket form) of at least one hundred thousand dollars ($100,000.00) (F) Employee Practices Liability

PSLM002873HIGHLY CONFIDENTIAL

Insurance coverage of at least $75,000. Manager shall maintain at the expense of the Facility workers' compensation insurance at statutory limits covering all employees, including but not limited to Facility Employees. For all claims-made policies, Owner will maintain coverage such that any event occurring during the period of this Agreement will be covered if reported within a period of two-years after the termination of this Agreement. All such policies shall be with a financial equivalent of a Best's insurance rating of "A VIII" or better. Owner and Owner's partners shall be named as primary insureds on all policies. Owner shall provide a current certificate of all insurance policies described in this Section to Manager. Sections 4(m)(i) and (ii) above shall apply to all policies maintained under this Section 4(m)(iii).

n.    <u>Insurance and Indemnification:</u>  Owner shall procure and maintain at Owner's expense such additional insurance in kinds and amounts as Owner shall be required to carry pursuant to the provisions of any note, loan agreement or mortgage outstanding affecting the Facility or the real property upon which it is erected, as well as any other insurance that Owner shall require (including without limitation worker's compensation insurance, professional liability insurance, and all other insurance which it deems appropriate). Owner and Manager each shall give prompt notice to the other of any claims made against either or both of them and shall cooperate fully with each other with any insurance carrier to the end that all such claims will be properly investigated, defended and adjusted. All policies of liability insurance shall:

(i)    name the Owner and such other parties as may be required by the provisions of any note, loan agreement or mortgage as the insured thereunder, as their respective interests may appear as additional insureds; and

(ii)    name Manager as an additional insured.

o.    <u>Indemnification of Manager.</u>  Owner shall indemnify, defend and hold Manager free and harmless from any loss, liability, or cost (including reasonable attorneys' fees, regardless of whether any litigation is brought, but excluding consequential or punitive damages) not covered by insurance proceeds[1] that Manager may sustain, incur or assume as a result of any claims that may be alleged, made, instituted, or maintained against Manager alleged to have resulted from gross negligence or willful misconduct of Owner, its agents (other than Manager), representatives or employees, in connection with the management or operation of the Property; provided, however, that in the event of any conflict between this Section 4(o) and any existing insurance coverage, this Section 4(o) shall be modified to the extent necessary to provide the maximum available insurance coverage.

p.    <u>Indemnification of Owner.</u>  Manager shall indemnify, defend and hold Owner free and harmless from any uninsured[2] loss, liability, or cost (including reasonable attorneys' fees, regardless of whether any litigation is brought, but excluding consequential or punitive damages) that Owner may sustain, incur or assume as a result of any claims that may be alleged, made, instituted, or maintained against Owner, determined to have resulted from any criminal act, gross negligence or willful misconduct of Manager, its agents, representatives or employees, including, but not limited to, the Facility Employees to the extent that it is reasonable for the

---

[1] The term "not covered by insurance proceeds" includes claims for which there is no insurance coverage at all under the policies required under Section 4(m), as well as the portion of any claim that is not covered by any insurance deductible or is in excess of the policy limits of insurance coverage under the policies required under Section 4(m).

[2] The term "uninsured" as used in this Agreement means any claim for which there is no insurance coverage at all under the policies required under Section 4(m). Such term is distinguished from the term "not covered by insurance proceeds" which includes the portion of any claim that is not covered by any insurance deductible or is in excess of the policy limits of insurance coverage under the policies required under Section 4(m).

8

PSLM002874HIGHLY CONFIDENTIAL

Manager to have direct control of the Facility Employees in connection with the operation of the Facility; provided, however, that in the event of any conflict between this Section 4(p) and any existing insurance coverage, this Section 4(p) shall be modified to the extent necessary to provide the maximum available insurance coverage.

q.    Residency Agreements.

(i)    Manager shall implement a residency agreement form for use at the Facility, which shall be in compliance with all applicable governmental requirements and otherwise approved by Owner. Each such approved and executed residency agreement, a "**Residency Agreement**".

(ii)    Manager shall use its reasonable best efforts to secure full compliance from each resident with the terms of his or her Residency Agreement. Voluntary compliance shall be encouraged. In cases of financial hardship, Manager shall counsel residents and refer them to community agencies to avoid involuntary termination of residency. Subject to applicable procedures and law, Manager may lawfully terminate any Residency Agreement and tenancy when, in Manager's judgment, sufficient cause for such termination (including, but not limited to, nonpayment of rent) exists under the terms of the applicable Residency Agreement. For this purpose, Manager is authorized to proceed with actions for eviction, execute notices to vacate, and file judicial pleadings to such actions, following consultation with Owner and Manager's legal counsel (or Owner's legal counsel if so elected by Owner), if necessary. All legal fees associated with actions for eviction shall be an operating expense of the Facility.

r.    Collection of Rents and Other Receipts. Manager shall promptly bill and use its reasonable best efforts to collect all rents, monthly fees, optional fees, charges, and other amounts receivable in connection with the management and operation of the Facility. Manager shall be entitled to enforce the rights of Owner as creditor under any residency agreement, contract or in connection with the rendering of any services.

s.    Rentals. Manager shall offer for occupancy and rent the dwelling units, and other rental facilities and concessions located at the Facility. Manager shall do all of the following with respect to renting units:

(i)    Make preparations for initial rent-up;

(ii)    Show the premises to prospective residents;

(iii)    If an application is rejected, record the reasons for rejection in accordance with the Facility's policies;

(iv)    Maintain and regularly update a list of prospective residents;

(v)    Execute all residency agreements with residents as Manager of the Facility as Owner's agent. Manager shall review and approve each residency agreement. All residency agreements shall comply with applicable laws; and

(vi)    Annually and upon Owner's request, furnish Owner with rental schedules, showing monthly fees for dwelling units and other charges for facilities and services as they may be modified from time to time.

LA1 1212072v.2

PSLM002875HIGHLY CONFIDENTIAL

t.   Activities.  Manager shall plan and conduct social and resident services programs at the Facility.

u.   Outreach and Discharge Planning.  Manager shall maintain a liaison with health facility discharge planners, community groups and public service organizations, and shall inform such organizations, by written notice or personal contact, of the criteria for residency at the Facility.  In addition, as an operating expense to the Facility, Manager shall assure that brochures, newsletters, and other promotional materials are prepared and distributed in the local market area to publicize the Facility's availability.  Manager shall ensure the facility staff has procedures, training and support so that residents who require skilled nursing care or other care beyond the capacity of the Facility's license are discharged to an appropriate facility.  Manager shall take all steps, including cooperating with discharge planners, to assure a smooth transfer to such alternate facility.

v.   Resident-Management Relations.  Manager shall encourage and work to maintain good-faith communications with residents to help avoid and solve problems and disputes affecting the Facility and its residents.  Manager shall assist residents in forming a resident council that convenes at noticed meetings with agendas and minutes.

w.   Non-Discrimination.  In performing its obligations under this Agreement, Manager shall use its reasonable best efforts to comply with all federal, state and local laws prohibiting illegal discrimination in housing on the basis of race, color, sex, creed, disability or national origin, including, without limitation, Title VI of the Civil Rights Act of 1964 (Public Law 88-352, 78 Stat.241); regulations issued pursuant to that Title (24 CFR, Subtitle A, Part 1); regulations issued pursuant to Executive Order 11063; Title VIII of the 1968 Civil Rights Act; the Americans with Disabilities Act of 1990 (42 USC § 12181 et seq.); the Fair Housing Amendments Act of 1988 (42 USC § 3604(f) et seq.); Section 504 of the Rehabilitation Act of 1973 (29 USC § 794).  From and after the Effective Date, Manager shall ensure that all service contracts with third-party contractors and providers shall include the following language:  "There shall be no discrimination against or segregation of any person or group of persons on account of race, color, creed, religion, sex, marital status, national origin or ancestry in the sale, lease, sublease, transfer, use, occupancy, tenure or enjoyment of the land, nor shall the transferee itself or any person claiming under or through it, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use or occupancy of tenants, lessees, subtenants, sublessees, or vendees of the land."

x.   Ownership of Documents.  All accounting records and other financial data, reports and materials used by Manager in performance of its duties and obligations under this Agreement shall at all times be the property of Owner; provided, however, that Manager shall have access at all reasonable times to all records and instruments required to perform its duties under this Agreement and Manager has the right, at Operator's expense to make and retain copies of all such records.  Manager agrees that Manager shall have access at all reasonable times to inspect and make copies of all data and materials pertaining to the services to be performed for the Facility under this Agreement.  In the event that Manager brings to the Facility certain proprietary books, manuals, technical data, computer software, and the like, these items shall be the sole property of Manager, and Owner shall take reasonable steps to maintain the confidentiality of all such property.  Both Owner and Manager shall have access to all such proprietary materials at all reasonable times, and shall maintain the confidentiality thereof to the fullest extent possible.  If Owner and/or the Facility pays by direct invoice from a vendor for the ownership of any of these items, they shall thereupon become the sole property of Owner.

y.   Safety.  Manager shall exercise reasonable due diligence in all matters of safety, including but not limited to emergency evacuation of residents, maintaining safe conditions at the Facility, providing safety training to all Facility Employees, and promulgating rules and regulations for use of the central administration and service communities.

LA1 1212072v.2

PSLM002876HIGHLY CONFIDENTIAL

z.    <u>No Violation</u>.  Manager shall not be deemed to be in violation of this Agreement if Manager is prevented from performing any of its obligations hereunder for reasons beyond its reasonable control, including, without limitation, strikes, walkouts or other employee disturbances, acts of God, terrorism, or the effect or promulgation of any statute, rule, regulation or order by any federal, state or local governmental or judicial authority or official, or failure of Owner to provide sufficient funds,  nor shall it be deemed to be in violation hereof or otherwise liable for any error of judgment or act or omission which is made in good faith but without negligence.  In providing its services hereunder, Manager shall use commercially reasonable efforts to comply with all laws and regulations applicable to the Facility.

aa.    <u>Owner's Responsibilities</u>.      Subject to the terms of this Agreement, Owner agrees to take or cause to be taken any and all actions necessary to be taken by it as the entity with complete dominion and control over the assets and operations of the Facility in order to maintain all required licenses, permits for the operation of the Facility and the Facility's eligibility to participate in all public or private third-party medical payment programs, including providing sufficient funds to bring the Facility in compliance with all applicable fire safety codes and other laws, regulations and orders, and to correct all structural, maintenance, procedural and staffing deficiencies as shown on the surveys and reports of governmental agencies having jurisdiction over the Facility.

## 5.    **Confidentiality.**

a.    <u>"Confidential Information" Defined</u>.  "Confidential Information" shall mean any and all information that is or has been disclosed in writing or orally by either party to the other party, which is either confidential or proprietary in nature.  "Confidential Information" shall not include any of the following:

    (i)    Information that is or will become generally available to the public through no fault of the receiving party.

    (ii)    Information that was known to the receiving party before that party received it under this Agreement and was not acquired, directly or indirectly, from the disclosing party.

    (iii)    Information that is disclosed in good faith to the receiving party by a third party lawfully in possession of such information and who is not under an obligation of nondisclosure with respect to such information.  All Confidential Information shall remain the sole property of the party that owned such information prior to the execution of this Agreement unless a sale or other transfer of the Confidential Information occurs during the term of this Agreement.

b.    <u>Nondisclosure</u>.  During the term of this Agreement and for five (5) years thereafter, neither party shall, without the prior written consent of the other party, disclose to any third party (unless such disclosures are required by law) or use for its own purposes (except as contemplated by this Agreement) any Confidential Information concerning the other party's business, operations, or products that is obtained in the course of performing this Agreement.

c.    <u>Treatment of Confidential Information</u>.  The parties acknowledge that they may have already received or will receive in the future Confidential Information concerning the other party.  The parties agree that they shall do all of the following upon receipt of such Confidential Information:

    (i)    maintain Confidential Information in confidence and refrain from disclosing it to any third party; and

PSLM002877HIGHLY CONFIDENTIAL

(ii)    refrain from providing Confidential Information to its employees or its affiliates' employees, except to the extent necessary for the receiving party or its affiliates' employees to perform the obligations and services described in this Agreement.

6.    **Collection and Disbursement of Revenue.**

a.    Project Operating Account. Owner shall establish operating accounts for the Facility at a banking institution of its choosing, provided it is located in the area where the Facility is located, to deposit all income from the Facility's operations therein, and to pay all expenses of the Facility there from (collectively, the **"Project Operating Account"**). Owner shall be the only authorized signatory on such account. Owner shall provide sufficient working capital to fund the operation of the Facility and to service debt in connection therewith. Manager shall use commercially reasonable efforts to ensure that all revenues are either directly deposited into the Project Operating Account or are delivered to Owner and made payable to Owner. Manager shall encourage payors to make payments to Owner in forms other than cash and any cash payments made shall be delivered to Owner as soon as practicable after receipt of same.

b.    Disbursements. From the funds collected and deposited by Manager or Owner in the Project Operating Account, Owner will make (or as requested by Manager in connection with Approved Budget expenses) the following disbursements promptly when payable:

(i)    Compensation and fringe benefits (including severance pay) payable to and for Facility Employees, who work at the Facility and for the taxes and assessments payable to local, state, and federal governments in connection with the employment of such personnel; and

(ii)    All sums otherwise due and payable by Owner as expenses of the Facility authorized under the Approved Budget or otherwise approved of by Owner under the terms of this Agreement, including compensation payable to Manager for the services described herein.

c.    Non-Facility Obligation. The Project Operating Account shall not be used to pay any obligations that are not incurred by Manager or Owner for or on behalf of the Facility.

d.    Operating Expenses. Owner shall deposit into the Project Operating Account funds necessary for the Facility's operating expenses or for expenses approved by Owner in excess of budgeted expenses.

e.    Insufficient Funds. In the event that the balance in the Project Operating Account is at any time insufficient to pay disbursements that are due and payable under Section 6(b), Manager will inform Owner of that fact. Owner shall remit to Manager sufficient finds to cover the deficit within five (5) business days.

7.    **Owner's Reserved Rights.**

Notwithstanding anything herein to the contrary, Owner expressly reserves the right to approve all of the following under this Agreement:

a.    Marketing plans and programs (on an annual basis) and any non-affiliate entity of Manager retained by Manager to create such plans and programs, which approval by Owner shall not be withheld unreasonably.

b.    All agreements affecting the Facility with a term of greater than one year, which approval by Owner may be withheld in its sole and absolute discretion.

LA1 1212072v.2                                                                PSLM002878HIGHLY CONFIDENTIAL

c.      All agreements affecting the Facility (regardless of length of term and notwithstanding subsection "b" above) that cannot be terminated without (i) cause by Owner upon thirty (30) days notice or less and (ii) payment of any termination fees or penalties, which approval by Owner shall not be withheld unreasonably;

d.      All contracts with entities affiliated with Manager or any of its principals, which approval by Owner may be withheld in its sole and absolute discretion;

e.      Annual budgets, which approval by Owner shall not be withheld unreasonably;

f.      Subject to Section 4(k)(v), unbudgeted capital costs and improvements involving costs exceeding five thousand dollars ($5,000.00), which approval by Owner shall not be withheld unreasonably;

g.      Insurance coverage for the Facility, which approval by Owner shall not be withheld unreasonably;

h.      Settlement of any litigation or substantial claim affecting the Facility (regardless of whether Owner is a named party), which approval by Owner shall not be withheld unreasonably;

i.      Any material structural and/or physical changes to the Facility, which approval by Owner may be withheld in its sole and absolute discretion;

j.      All leases to non-residents, which approval by Owner shall not be withheld unreasonably; and

k.      All loans, advances, hypothecation's, and draws of five thousand dollars ($5,000.00) or more related to the Facility, which approval by Owner may be withheld in its sole and absolute discretion.

8.      MIS: Manager shall provide computer support services to Owner including but not limited to:

- Oversight of acquisition and maintenance of equipment
- Computer related technical support
- Network management of all data
- Software license management
- Data retention and recovery systems
- Virus and security protection systems
- Email and internet access

All software licensed to the Manager and provided to the Owner for shared use shall remain the property of the Manager unless agreed to otherwise in writing by both parties. All hardware and software solely used at the Facility is property of the Owner.  The Owner shall be responsible for  a pro rata  payment based on total number of units licensed of all costs associated with Manager's provision of the above services to include but not limited to equipment, hardware, software, software licensing, voice and data services, equipment and software maintenance and technical support

13

PSLM002879HIGHLY CONFIDENTIAL

9.    Manager's Compensation and Expenses.

      a.    <u>Startup / Conversion Service Fee</u> A Startup/Conversion Service Fee in the amount of $5,000.00 is to be paid by Owner to Manager upon execution of this agreement. The Startup/Conversion Service Fee covers all of the Manager's services outlined below:

Cash Management
- Use existing bank accounts
- Access online banking
- Establish electronic funds transfer

Financial Systems
- Create Great Plains Database (Financial)
- Create Senior Master Database (Rent roll)
- Create Fixed Asset Database
- Create Accounts Receivable Filing Systems (Billing)
- Create Accounts Payable Filing Systems
- Create Other Accounting Filing Systems

Budgeting
- Competitive Wage Studies
- Competitive Rate and Market Studies
- Create initial budgets
- Create budget variations and analysis
- Finalize budget
- Load budgets into Great Plains Database

Insurance

Human Resources
- 

Licensing
- Review and update of facility Disaster Plan

Transfer of Liabilities
- Coordinate transfer and assumption of leases and maintenance agreements
- Set-up new credit relationships with all vendors

<u>Contract Negotiations</u>
- Review and participation in development of sales contract.

14

PSLM002880HIGHLY CONFIDENTIAL

b..<u>Management Fee.</u>  The service fees to be paid by Owner to Manager will be paid on a monthly basis calculated as cumulative total of 5% percent of collected gross revenues derived from the Owner's operations including rental from concessions at the facility and all other sources relating to the operation of the facility on a cash basis, and in accordance with generally accepted accounting principles.   A fee of the previous month's Management Fee shall be payable by the 5th of each month.  Any excess or shortage over the fee for a particular month shall be reconciled and paid within 5 days of completion of the financial statements for that month.

(i) <u>Incentive Bonus.</u>  Manager shall receive an annual bonus of ten percent (10%) of the amount by which Net Operating Income exceeds the Net Operating Income in the Approved Budget, tested and paid quarterly, payable no later than thirty (30) days following the budget period.  Manager's Incentive Bonus is not an ownership or equity interest in the project.

c.    <u>Employee Expenses.</u>  In addition to the above management fee, either (i) Manager shall be reimbursed for the direct employee and Facility Employee expenses or (ii) the direct employee expenses for employees, including but not limited to Facility Employees, shall be paid from the Project Operating Account; provided that in all cases, such reimbursements shall not exceed those allocated in the Approved Budget and that any Facility Employee that devotes time to other facilities of Manager or the general overhead management of Manger shall have the portion of such time not devoted to the Facility paid exclusively by Manager from sources other than Owner, the Facility or the Project Operating Account.  In addition, the following expenses shall not be the obligation of Owner or the Facility nor paid from the Project Operating Account and shall be the sole obligation of the Manager:

(i)    General accounting and reporting services, as such services are considered to be within the reasonable scope of Manager's responsibility to Owner;

(ii)    Cost of forms, stationery, ledgers and other supplies and equipment used in Manager's principal office or regional office;

(iii)    Cost or pro-rata cost of telephone and general office expenses incurred at the Facility by Manager for the operation and management of properties other than the Facility;

(iv)    Cost or pro-rata cost of electronic data processing, for data processing provided by computer service companies, except as outlined in paragraph 8;

(v)    Cost of all bonuses, incentive compensation, profit sharing, or any pay advances by Manager to Manager's employees, except to employees located at the Facility and then only to the extent approved under the then Approved Budget;

15

PSLM002881HIGHLY CONFIDENTIAL

(vi)    Third party claims resulting from criminal acts or from gross negligence or fraud on the part of those Facility Employees to the extent that it is reasonable for the Manager to have direct control of the Facility Employees,  the Manager or Manager's affiliates or employees, or any other claims, actions, suits, proceedings, losses, costs and expenses for which Manager is obligated to indemnify Owner under Section 4(p).

(vii)   Cost of comprehensive crime insurance purchased by Manager for its own account.

(viii)  Costs for meals, travel and hotel accommodations for Manager's principal office or regional office personnel who travel to and from the Facility.

d.      Payment Policy.  Owner will pay Manager from the Project Operating Account the management fee described in Section 8(a) on the fifth (5th) day of the calendar month as defined in section 8(b)

e.      Owner's Failure to Pay.  As described in Section 9(c), Owner's nonpayment of any management fees or employee expenses due under this Section 8 shall constitute cause for termination of this Agreement by Manager.

**10.    Term and Termination.**

a.      Term.  The initial term of this Agreement shall begin on Effective Date, and shall end after one year unless sooner terminated as set forth below (the "**Initial Term**").  This Agreement shall renew for one additional one (1) year period (the "**Renewal Term**") at the expiration of the Initial Term if Owner has not given Manager at least thirty (30) days prior written notice of its election to terminate this Agreement. Notwithstanding anything to the contrary in this Agreement, Owner and/or Manager shall be entitled to terminate this Agreement for any reason or no reason at all and any time during the Initial Term or the Renewal Term upon thirty (30) days prior written notice.

b.      Termination by Owner for Cause.  Owner may terminate this Agreement immediately for "cause" if any of the following occurs:

(i)     If Manager or any of its directors, officers, employees, contractors, subcontractors or agents shall be guilty of any gross negligence, willful misconduct, fraud, malfeasance or breach of fiduciary duty, with respect to the Facility or the Project Operating Account;

(ii)    Subject to the notice and cure period described in Section 9(d), Manager's material breach of any of the provisions of this Agreement.

(ii)    Manager or any of its principal operating officers is convicted of any felony or any other crime that materially affects the operation of reputation of the Facility.

(iii)   The filing of a voluntary or involuntary petition to declare Manager bankrupt or insolvent if such petition is not discharged within ninety (90) days after its filing.

(iv)    Owner substantiated Manager has committed fraud, material misrepresentation, embezzlement or gross negligence in the performance of any of its obligations under this Agreement.

LA1 1212072v.2

PSLM002882HIGHLY CONFIDENTIAL

(v)    If any material license held by Manager and necessary for the performance of its duties or services hereunder shall be terminated or suspended, and Manager does not arrange for the reinstatement of such license within five (5) days after its termination or suspension.

(vi)    If Manager's company existence shall be dissolved or terminated by merger, consolidation or otherwise without the consent of Owner.

(vii)    Upon the sale of the Facility by Owner or any successor-in-interest to Owner.

c.    <u>Termination by Manager for Cause.</u>  Manager may terminate this Agreement for "cause" if any of the following occur:

(i)    Owner fails, within five (5) business days following receipt of notice of a Project Operating Account deficit from Manager, to provide adequate cash funds for reasonable, Approved Budget expenses incurred in managing and operating the Facility.

(ii)    Subject to the notice and cure period under Section 9(b), Owner materially breaches any of the provisions of this Agreement.

(iii)    The filing of a voluntary or involuntary petition to declare Owner bankrupt or insolvent if such petition is not discharged within ninety (90) days after its filing.

d.    <u>Notice and Cure Period.</u>  In the event that Owner or Manager determines that the other party has materially breached this Agreement, the non-breaching party shall allow the other party a period of sixty (60) days to cure the breach after receipt of notice thereof from the non-breaching party. If the default cannot be cured within sixty (60) days, no material breach shall occur so long as the breaching party begins curing the breach within sixty (60) days of receiving notice from the non-breaching party and diligently continues to cure the breach thereafter. Notwithstanding the foregoing, there shall be no notice or cure period for criminal acts or any other willful misconduct that is the basis of a breach under this Agreement.

e.    <u>Manager's Obligations after Termination.</u>

(i)    Manager shall submit all of the following to Owner within ten (10) days following this Agreement's termination: (A) all books, records, contracts, leases, receipts for deposits, unpaid bills then in the possession of Manager, the then current rent roll, and all other papers or documents (including, without limitation, all computer tapes, disks and software) which pertain to the Facility; (B) all financial statements; (C) any plans and specifications pertaining to the Project then in the possession of Manager; (D) all bank and petty cash assets under the responsibility of Manager for the operation of the Facility; (E) any trust and investment accounts under responsibility of Manager for the operation of the Facility; (F) all of Owner's intellectual community, including, without limitation, trademarks, service marks, copyrights, patents, resident lists and trade secrets; and (G) a complete reconciliation of all records pertaining to the operation of the Facility.

(ii)    Manager shall submit all of the following to Owner within one (1) day of the termination of this Agreement: all keys and keycards to any locks at the Facility then in the possession of Manager.

PSLM002883HIGHLY CONFIDENTIAL

(iii)    In addition, upon notice of termination of this Agreement, Manager shall assist Owner in coordinating with any successor manager of the Facility to ensure a smooth transition from Manager to such successor manager.

f.    Owner's Obligations after Termination.  In the event of any termination of this Agreement, Manager shall be entitled to the payment of any management fees and reimbursable expenses due to Manager through the effective date of any such termination and all Facility Employees expenses shall be paid through to such date on the terms provided herein.  Notwithstanding the foregoing, in the event Owner terminates this Agreement under Section 9(b)(i), Manager shall forfeit and Owner shall have no obligation to pay any accrued but unpaid management fees.

g.    Management Fee Post Sale by Owner.  Upon the sale of the Facility by Owner or a successor-in-interest to Owner, the existing management compensation structure set forth herein shall continue to inure to the benefit of Manager in compensation for management services conducted up until the consummation of escrow.

h.    If the Facility is meeting or exceeding budget and Owner terminates this agreement without cause within the Initial Term, the Owner shall pay Manager a termination fee equal to the three (3) months management fee based on the three (3) months immediately preceding the termination notice.  This termination fee must be paid prior to receiving a final accounting from Manager.  Termination of this Agreement due to monetary default shall be considered termination by Owner.

i. Upon termination and at the discretion of the Owner, the Manager will submit to the Manager or assigns a final accounting within 45 days after the termination date provided the Manager has been furnished all necessary and proper information, statistics, records and data to compile and summarize such final accounting. The Owner shall be obligated to pay Manager an amount equal to $5,000.


11.    **General Provisions.**

a.    Relationship of Parties:  Owner and Manager shall not by virtue of this Agreement be deemed partners or joint ventures in the operation of the Facility.  It is expressly understood that Manager is retained by Owner to manage the Facility on behalf of Owner and the Manager is the sub-agent of Owner only for the purpose of carrying out its obligations under this Agreement.  Nothing in this Agreement shall be deemed to restrict in any way the freedom of Manager to conduct any other business or activity whatsoever including but not limited to the management and or ownership of congregate care communities, nursing homes, assisted living communities or retirement homes without accountability to Owner or to any other party hereto.

b.    Independent Contractors.  Nothing in this Agreement shall be construed to create a partnership, joint venture, or employer-employee relationship between the Owner and the Manager.  Manager and Owner are at all times independent contractors under this Agreement.  Manager shall not be jointly liable with Owner for Owner's debts or obligations with respect to the Facility or any financing arrangements entered into by Owner with respect to the Facility.

c.    Counterparts.  This Agreement may be executed in several counterparts, each of which shall constitute a complete original Agreement.

d.    Headings.  The article and paragraph headings contained herein are for convenience of reference only and are not intended to define the scope or intent of any term of this Agreement.

e.    Applicable Law.  This Agreement shall be construed under Florida law.

LA1 1212072v.2

PSLM002884HIGHLY CONFIDENTIAL

f.        Severability:  If any of the provisions of the Agreement are determined by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not affect the remaining provision of this Agreement.

g.        No Waiver.  The failure of either party to insist upon strict performance of any term of this Agreement or to exercise any option, right or remedy herein shall not be deemed a waiver of such term, provision, option, right, or remedy.  No waiver by either party of any term hereof shall be valid unless contained in a writing signed by the waiving party.

h.        Reasonableness.  Except as expressly provided herein, all consents, approvals, determinations, requirements, and other acts required by either party hereunder shall be reasonable under the circumstances, and no such consents, approvals, determinations, requirements or other acts required by either party shall be unreasonably withheld, delayed, or denied.

i.        Mutual Cooperation.  The parties shall execute and deliver all appropriate instruments and take all actions necessary to make this Agreement fully and legally effective, binding and enforceable, as between the parties and as against third parties.

j.        Time of Essence.  Time is of the essence in each and all of the agreements, covenants, and conditions hereof.

k.        No Third Party Beneficiaries.  This Agreement is entered into for the benefit of Manager and Owner.  No other parties are intended to be third-party beneficiaries of this Agreement.

l.        Rights of Non-Parties:  Nothing in this Agreement, whether expressed or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and permitted assigns.  Subject to the preceding sentence, no term or provision of this Agreement is intended (i) to relieve or discharge the obligation or liability of any non-party to any party to the Agreement; or (ii) to give any non-party any right of subrogation or action over and against any party to this Agreement.

m.        Notices.  All notices or other communications required or permitted hereunder shall be in writing and addressed as set forth below and either personally delivered, sent by overnight mail (Federal Express or the like), or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by telecopy.  Notice hereunder shall be deemed to have been properly given or served for all purposes and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice if delivered during ordinary business hours; (ii) if sent by overnight mail, the business day following its deposit in such overnight mail facility; (iii) if mailed, on the third business day following the date of posting by the United States post office; or (iv) if given by telecopy, when the sender receives a confirmation of receipt generated by the sending telecopy machine, if sent during ordinary business hours of the sender.  Any notice, request, demand, direction, or other communication sent by telecopy must be confirmed within forty-eight (48) hours by letter mailed or delivered in accordance with the foregoing.

LA1 1212072v.2

PSLM002885HIGHLY CONFIDENTIAL

<table>
<tr><td>If to Owner:</td><td>If to Manager:</td></tr>
</table>

|  |  |
|---|---|
| Pacifica East Lake LLC | Pacifica Senior Living LLC |
| Attn:  Deepak Israni | Attention: Adam Bandel |
| 1785 Hancock Street, Suite 100 | 1785 Hancock Street |
| San Diego, CA  92110 | Telephone: 619-296-9000 |
| Phone:  619-296-9000 | Facsimile:  619-296-9090 |
| Fax: 619-296-9090 | (e-mail): |
| (e-mail): | abandel@pacifciaseniorliving.com |
| disrani@pacificacompanies.com |  |
|  |  |
| and | and |

Thomas P. Sayer, Jr., Esq.
9974 Scripps Ranch Blvd., #284
San Diego, CA  92131
(858) 335-9590 (voice)
(858) 348-2348 (fax)
tsayer1@san.rr.com (e-mail)

Any of the parties may designate a change of address by Notice to the other parties.  Whenever in this Agreement the giving of Notice is required, the giving of such Notice may be waived in writing by the person or persons entitled to receive such Notice.

n.     Assignment.  Neither party shall assign, transfer or delegate any of its rights or duties hereunder without the prior written approval of the other party.

o.     Survival.  Sections 5, 9e, and  shall survive the termination of this Agreement.

p.     Attorneys' Fees.  If any party to this Agreement shall bring any action for any relief against any other party, declaratory or otherwise, arising out of this Agreement, the losing party shall pay to the prevailing party a reasonable sum for attorneys fees incurred in bringing such suit and/or enforcing any judgment granted therein, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment.  Any judgment or order entered in such action shall contain a specific provision for the recovery of attorneys fees and costs incurred in enforcing such judgment.  For the purposes of this section, attorneys fees shall include, without limitation, fees incurred in the following: (i) post-judgment motions; (ii) contempt proceedings; (iii) garnishment, levy, and debtor and third party examinations; (iv) discovery; and (v) bankruptcy litigation.

q.     Entire Agreement and Amendment:  This Agreement and the documents incorporated by reference herein constitute the entire Agreement regarding management services between Owner and Manager and supersede all prior proposals, negotiations, representations and other communications between Owner and Manager, whether oral or written.  This Agreement may not be amended except by a written agreement fully executed by Manager and Owner.

r. Subordination of Management Agreement:   Manager acknowledges this Agreement shall be subject and subordinate to the lien of holder of the first deed of trust secured by the Property.  Manager shall execute an *Assignment and Subordination Agreement* on commercially reasonable terms as required by Owner's lender.

LA1 1212072v.2

PSLM002886HIGHLY CONFIDENTIAL

Manager shall provide such commercially reasonable estoppel certificates as may be requested by Owner from time to time.

       s. <u>Destruction by Casualty:</u> In the event that fire or other casualty destroys the Owner's facility wholly or partially, Owner will notify Manager of the decision to repair or restore within sixty (60) days of the date the casualty occurs. Despite the occurrence of said casualty, this Agreement shall continue in full force and effect with Manager receiving the normal compensation provided for herein. If Owner elects to repair or restore the premises to their former condition the normal compensation will amount to payment of a fee equivalent to the monthly fee for the month preceding the month the casualty occurs. In the event Owner elects not to repair or restore the premises to an acceptable and operable condition as prior to the date of the casualty, this Agreement shall be terminated within thirty (30) days after proper notice is given to Manager.

**[SIGNATURE PAGE TO FOLLOW]**

LA1 1212072v.2

PSLM002887HIGHLY CONFIDENTIAL

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first written above.

**MANAGER:**

**PACIFICA SENIOR LIVING LLC,**
a Delaware limited liability company

By: _____
Name: Deepak Israni
Title: General Manager

**OWNER:**

**PACIFICA EAST LAKE LLC,** a California limited liability company

By: _____
Name: Deepak Israni
Title: General Manager

PSLM002888HIGHLY CONFIDENTIAL